IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM JOHN FELDHACKER, | ) | |
| | ) | |
| Petitioner, | ) | 8:06CV644 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS BAKEWELL, Warden, and | ) | **MEMORANDUM** |
| ROBERT HOUSTON, | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

This is a habeas corpus case primarily predicated on a Sixth Amendment speedy trial argument and a Fourteenth Amendment due process argument. I conclude that Petitioner is not entitled to relief, and I will therefore dismiss his petition. Briefly, the reasons for my decision are set forth below.

## *I. BACKGROUND*

First, I present the details of what happened in the state courts. I then discuss my initial review of this case. That initial review narrowed the focus.

### *State Court Proceedings*

On September 11, 2000, Petitioner was arraigned in the District Court of Seward County, Nebraska, on the following charges: (1) resisting arrest; (2) third degree assault on a police officer; (3) second-offense refusal of a chemical test; (4) second-offense driving under suspension; (5) fourth-offense driving while intoxicated; and (6) possession of an open alcoholic beverage container.[1] ([Filing No. 9-4, Attach. 3](), at CM/ECF pp. 4-5.)  The date of the offense was alleged to be July

---

[1]The "open container" violation was subsequently dismissed.

29, 2000. (Filing No. 9-11, Attach. 10, at CM/ECF pp. 24-26 (charging document).) The charging document was filed on August 30, 2000. (*Id.*)

The records show that Petitioner went through eight lawyers in an unsuccessful but protracted effort to avoid conviction. (Filing No. 9-10, Attach. 9, at CM/ECF p. 26.) In short, it is fair to say that the trial judge exercised commendable patience with Petitioner.

In a letter to the judge, which was filed on July 10, 2001, and treated as a motion for discharge, Petitioner, acting pro se, complained about the delay and requested another lawyer. (Filing No. 9-11, Attach. 10, at CM/ECF p. 21.) After the District Court denied the motion to dismiss the charges on speedy trial grounds on December 31, 2001 in a detailed and thoroughly written opinion (filing no. 9-11, attach. 10, at CM/ECF pp. 11-20 ("Opinion & Order Denying Discharge")), Petitioner, using the services of yet another new lawyer, filed an appeal as authorized by Nebraska law.[2] He assigned as error "that the [district] court erred in denying the Defendant's (1) Motion for a Speedy Trial as set out in Neb. Rev. Stat. § 29-1208 (Reissue 1995) and (2) Constitutional right to a speedy trial." (Filing No. 9-8, Attach. 7, at CM/ECF p. at 6.)

The Nebraska Court of Appeals issued a decision on March 11, 2003, that affirmed the denial of Petitioner's motion to dismiss but modified the District Court's finding that the State had 45 days left under Nebraska's 6-month speedy trial statute to bring Petitioner to trial; the time remaining was reduced to 5 days. *See State v. Feldhacker*, 657 N.W.2d 655 (Neb. App. 2003); (Filing No. 9-10, Attach. 9, at CM/ECF pp. 1-12). On a motion for rehearing filed by the State, the Court of Appeals replaced one section of the opinion but did not change the result. *See State*

---

[2]Under Nebraska law, a motion to discharge on speedy trial grounds involves a special statutory proceeding and the denial of such a motion is treated as a final, appealable order. *See State v. Jacques*, 570 N.W.2d 331, 336 (Neb. 1997).

*v. Feldhacker*, 663 N.W.2d 143 (Neb. App. 2003); (Filing No. 9-10, Attach. 9, at CM/ECF pp. 13-15). The Nebraska Supreme Court then granted petitions for further review filed by both parties and, on January 4, 2004, affirmed the Court of Appeals' decision as modified. The Supreme Court determined that there were 26 days remaining under the speedy trial statute; it also found it unnecessary to consider the State's claim that the Court of Appeals had erred in determining that Petitioner had asserted his constitutional right to a speedy trial in the District Court. *See State v. Feldhacker*, 672 N.W.2d 627 (Neb. 2004); (Filing No. 9-10, Attach. 9, at CM/ECF pp. 16-23).

The mandate issued on February 5, 2004, was filed in the District Court on February 10, 2004, and on February 25, 2004, the trial judge scheduled Petitioner's trial for March 9, 2004. (Filing No. 9-13, Attach. 12, at CM/ECF pp. 50, 51.)[3] On March 5, 2004, Petitioner, through his seventh lawyer, filed a motion for a continuance of the trial. (Filing No. 9-13, Attach. 12, at CM/ECF pp. 62-63.) The motion was heard by the District Court on March 8, 2004, and was denied. (Filing No. 9-7, Attach. 6, at CM/ECF p. 9.) Petitioner's counsel orally renewed the motion several times during the next three days—at a hearing on a motion to suppress on March 9th, prior to commencement of trial on March 10th, after the State had rested on March 11th, and again at the conclusion of the case on March 11th—and on each occasion the motion was denied. (Filing No. 9-7, Attach. 6, at CM/ECF pp. 95-96; filing no. 9-4, attach. 3, at CM/ECF p. 19; filing no. 9-5, attach. 4, at CM/ECF pp. 84-86, 114.)

---

[3]The Nebraska Supreme Court stated that "the State will have 26 days *from the date when the district court acts on the mandate* in which to bring Feldhacker to trial . . . ." *State v. Feldhacker*, 672 N.W.2d at 636 (emphasis added). As a result, the March 9th trial date was well within 26 days measured from the date the trial judge acted on the mandate (February 25, 2004).

As accurately summarized in the Respondents' brief, the evidence against Petitioner was overwhelming. ([Filing No. 24](#) at CM/ECF pp. 17-22.) That evidence included, but is not limited to, the confession of Petitioner and eye witness accounts of his crimes. For example:

\*    Trooper Randy Bybee of the Nebraska Highway Patrol testified that on July 29, 2000 he was dispatched to look for a blue pickup with a particular plate number that was said to be moving westbound on Interstate 80 ("I-80"). Dispatch advised that the driver was intoxicated. Trooper Bybee was later advised by dispatch to go to a parking lot near I-80. Trooper Bybee went to the parking lot, located the blue pickup with the specific plate number that had been relayed to him, and contacted the Petitioner who was sitting behind the steering wheel of the parked but still running truck. Petitioner admitted that he had come from I-80 and was the person driving the truck. Petitioner's speech was slurred and he staggered as he got out of the pickup. Bybee contacted the dispatcher and learned that a warrant had been issued for Petitioner. When Bybee tried to arrest Petitioner, Petitioner, who was much larger than Bybee, stated that he was not going to jail and then attacked the officer. Two private citizens came to the officer's aid and helped Bybee hold the Petitioner down until other officers arrived. Trooper Bybee was transported to a hospital for treatment of the injuries he sustained while trying to apprehend the Petitioner. ([Filing No. 9-4, Attach. 3](#), at CM/ECF pp. 20-53.)

\*    Christopher Polly, a truck driver, testified that he was saw a blue pickup driving very erratically on I-80. He observed the pickup turn off I-80 near the parking lot where Petitioner was apprehended. Because he did not have a cell phone, Polly used a CB radio and instructed another truck driver to call 911 on that driver's cell phone. ([Filing No. 9-4, Attach. 3](#), at CM/ECF pp. 105-12.)

\*    Rex Peterson, an electrical engineer, testified the he was riding his motor cycle by the parking lot when he thought he saw the officer fall. Desiring to help,

he entered the parking lot and observed the officer and the Petitioner. He saw Petitioner throw a punch at the officer and a scuffle ensued. Noticing that the officer was considerably smaller than Petitioner, Peterson and another citizen helped the officer subdue Petitioner. (Filing No. 9-4, Attach. 3, at CM/ECF pp. 121-27.)

\*   Deputy Sheriff Robert Coryell testified that he arrived at the parking lot and found two civilians and Trooper Bybee restraining Petitioner on the ground. Coryell testified that a subsequent investigation revealed, among other things, that two bottles of tequila were found in the pickup. One was empty and one was half full. During booking, Petitioner was angry, belligerent and disheveled. (Filing No. 9-4, Attach. 3, at CM/ECF pp. 137-45.)

\*   Trooper Marcus Warnke testified that when he went to the parking lot he found Petitioner who had a strong order of alcohol on his breath. Petitioner's eyes were watery and bloodshot. In reference to the fight with Bybee, Petitioner told Warnke that he had not intended to hurt Bybee, who he classified as a "skinny guy," but he had been trained in the Marines "to take a big guy out as damn fast as possible." Petitioner adamantly refused to take a breath test, according to Warnke. (Filing No. 9-4, Attach. 3, at CM/ECF pp. 156-76.)

\*   Petitioner's criminal record was received in evidence. Among other things, it established that Petitioner's driver's license had been revoked prior to the incident in question. It also established that Petitioner had been previously convicted of driving under the influence on numerous occasions. In addition, it showed that Petitioner had been previously convicted of refusing to take a breath test. (Filing No. 9-5, Attach. 4, at CM/ECF pp. 62-80.)

Shortly after deliberations began, the jury returned a verdict of guilty as to counts 1 though 5, and judgment was subsequently entered on May 18, 2004. (Filing

No. 9-13, Attach. 12, at CM/ECF pp. 93, 110-11.) Using his eighth lawyer, Petitioner appealed his conviction to the Nebraska Court of Appeals and assigned as error that:

A. The District Court erred when it overruled the defendant's Motion to Continue on March 8, 9,10,11, [sic] 2004, which denied the defendant procedural due process.

B. The District Court erred when it overruled the defendant's motion on March 8,2004, [sic] to continue the trial in order to allow the defendant time to depose new State witnesses that were allowed to be added to the States witness list the day before the trial was to begin.

(Filing No. 9-9, Attach. 8, at CM/ECF p. 5.)

The Nebraska Court of Appeals, finding no abuse of discretion by the District Court, affirmed the judgment on September 13, 2005, in an unpublished decision. (Filing No. 9-10, Attach. 9, at CM/ECF pp. 24-28.) The Nebraska Supreme Court denied Petitioner's request for further review on October 26, 2005. (Filing No. 9-11, Attach. 10, at CM/ECF p. 40.) Petitioner admits that he did not file a motion for post-conviction relief under state law. (Filing No. 1 at CM/ECF pp. 2-4 and ¶¶ 11-13 (habeas petition recounting state court litigation).)

The Respondents admit that Petitioner's § 2254 petition, which was filed in this court on October 10, 2006, was timely. (Filing No. 10 at CM/ECF p. 3 (Answer).) That is, the Respondents admit that the petition is not barred by the relevant federal statute of limitations.

### *Initial Review*

Because Mr. Feldhacker submitted a Petition for Writ of Habeas Corpus that contained 372 pages (filing no. 1), after the Respondents answered, I conducted a

detailed review of the petition to sort the "wheat from the chaff." (Filing No. 12.) I found that Petitioner would be allowed to proceed on two claims: (1) that he was denied his Sixth Amendment right to a speedy trial and (2) that he was denied due process of law under the Fourteenth Amendment because the trial judge denied his seventh lawyer's motion for continuance.

With one possible exception, I also found that Petitioner would not be allowed to proceed on any other claims. In particular, I decided the following:

\*     To the extent that the petition contained a claim based upon a violation of Petitioner's right to a speedy trial under state law, that claim was not cognizable in this court. *See*, *e.g.*, *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) (violation of state speedy trial law, taken alone, does not present a federal claim). (Filing No. 12 at CM/ECF p. 6.)

\*     Any other due process claim and any ineffective assistance of trial counsel claim asserted in the petition were procedurally defaulted under federal law because (a) they had never been presented to the state courts; (b) Petitioner could have raised those claims on direct appeal (particularly because he had new counsel on direct appeal); and (c) Nebraska law would not allow him to belatedly raise those claims. *See*, *e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir.2006), *cert. denied,* 127 S. Ct. 2256 (2007) (If a petitioner fails to "fairly present" his claim to the state courts, and he can no longer present the claim to the state courts because, for example, a state court rule prohibits serial litigation, then the federal court will be precluded from considering the claim unless Petitioner demonstrates "cause and prejudice" or a "miscarriage of justice" like "actual innocence"); *State v. Lotter*, 664 N.W.2d 892, 911 (Neb. 2003) (a motion for post-conviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal.); *see also Akins v. Kenney*, 410 F.3d 451, 455-456 n.1 (8th Cir. 2005) (stating that "under Nebraska law, a claim that was or could have been asserted on direct appeal

may not be pursued in a postconviction relief motion.") (citing *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002)).

\* I suggested that Petitioner could excuse procedural default if Petitioner could show (as he apparently claimed) that he was actually innocent. (Filing No. 12 at CM/ECF p. 5.)

I directed the parties to brief the issues isolated on initial review. They have done so. (Filing Nos. 15 and 24.) In addition, the pertinent state court records have been submitted. (Filing Nos. 9 and 23.)

## II. ANALYSIS

Essentially, Petitioner "argues that he was denied his constitutional rights because his trial happened too soon after it had been delayed too long." (Filing No. 24 at CM/ECF p. 4 (Respondents' brief).) I examine each of those seemingly contradictory claims. After that, I examine whether Petitioner has shown that he is "actually innocent" such that a "gateway" to the procedurally defaulted claims may exist. Ultimately, I find and conclude that Petitioner is not entitled to any relief.

### *The Speedy Trial Claim*

The Nebraska Court of Appeals (in two opinions) and the Nebraska Supreme Court gave Petitioner's speedy trial arguments careful consideration on both state and federal grounds. As for the Sixth Amendment claim, the Nebraska courts applied *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (holding that where defendant was not seriously prejudiced by more than five-year delay between arrest and trial and defendant did not want a speedy trial, defendant's Sixth Amendment right to speedy

trial was not violated even though more than four years of the period was attributable to the prosecution's failure or inability to try another person in order to have that person's testimony at defendant's trial; observing that a defendant's constitutional right to speedy trial can be determined only on an ad hoc basis in which the conduct of the prosecution and the defendant are weighed and balanced; among factors which courts should assess in determining whether a particular defendant has been deprived of his right are length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant).

The Nebraska Courts determined that the ten months between the filing of Petitioner's pro se motion for discharge (on July 10, 2001) and the date the relevant charging document was filed (on August 30, 2000) did not violate Petitioner's Sixth Amendment rights. In particular, the Nebraska Supreme Court applied the four-factor test set out in *Barker v. Wingo*. It analyzed (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his speedy trial rights; and (4) whether the defendant was prejudiced. Essentially, the court found that factors one, two, and four favored a conclusion that no Sixth Amendment violation had occurred and factor three (whether the defendant asserted his speedy trial rights) was unclear.[4] *State v. Feldhacker*, 672 N.W.2d at 636.

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[4]Remember that it was Petitioner proceeding pro se, rather than his lawyer, who originally filed the motion for discharge.

proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless Petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With regard to the deference owed to the conclusions of law, a federal court may not grant a writ of habeas corpus unless the state court's legal conclusion "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner has wholly failed to provide any good reason to reject the ruling of the Nebraska courts on the Sixth Amendment claim. After my independent review of the record, and realizing in particular that Petitioner engaged in a "merry-go-round" of hiring and firing lawyers, I find and conclude that: (1) the determination of the Nebraska courts was not unreasonable insofar as the facts are concerned and Petitioner has failed to rebut the presumption of correctness; and (2) the determination of the Nebraska courts was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. *See*, *e.g.*, *Perry v. Kemna*, 356 F.3d 880, 889 (8th Cir. 2004) (state court's decision that delay of more than three and a half years in bringing petitioner to trial on murder charge did not violate his right to speedy trial, was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of facts in light of evidence presented to state court, as would warrant federal habeas relief).

### *The Due Process Claim Related to the Refusal to Continue*

The Nebraska Court of Appeals ruled that the trial court did not abuse its discretion in refusing to grant the motion for continuance. Despite the fact that the petitioner raised a due process argument in conjunction with that claim, the Nebraska

Court of Appeals did not decide that issue and the Nebraska Supreme Court did not resolve that question when it denied the petition for further review. Because the due process claim was fairly presented to the Nebraska courts, but was not decided by them, I proceed next to review that claim without giving the decision of the Nebraska courts any deference.

In his brief, Petitioner admits that he hired his seventh lawyer, the lawyer who tried the case, on January 25, 2004. (Filing No. 15 at CM/ECF p. 15.) That was approximately 43 days before trial commenced. About 39 days after he was retained, and on March 5, 2004, only a few days before trial, that lawyer filed a motion for continuance. The main reason for the continuance, according to counsel's oral explanation, was that "Mr. Feldhacker [is] basically saying that he was never at [the parking lot] . . . ." (Filing No. 9-7, Attach. 6, at CM/ECF p. 92.) According to counsel, he needed more time to substantiate that alibi. (*Id.*) In addition, the State had added two witnesses and counsel wanted to depose them. (*Id.*) In response to the latter argument, the prosecutor represented, and defense counsel did not dispute, that the statements of those witnesses taken by the police had been turned over to defense counsel. (*Id.* at CM/ECF pp. 92-95.)

As our Court of Appeals has said, in order to prove a due process violation when a trial judge denies a continuance motion, the habeas petitioner must show that he or she was denied fundamental fairness:

> [A] trial court enjoys broad discretion in ruling on matters of continuances. *See, e.g., Morris v. Slappy,* 461 U.S. 1, 11 (1983); *Urquhart v. Lockhart,* 726 F.2d 1316, 1319 (8th Cir.1984). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of justifiable request for delay'"rises to the level of a constitutional violation. *Slappy,* 461 U.S. at 11-12 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964)). In order to prevail, [a habeas petitioner] must

-11-

show that in denying his request for a continuance the district court acted in a manner "so egregious that it was fundamentally unfair." See Wade v. Armontrout, 798 F.2d 304, 307 (8th Cir.1986).

White v. Lockhart, 857 F.2d 1218, 1220 (8th Cir. 1988) (due process violation was not shown where the petitioner moved, pro se, for a continuance on the day of trial claiming that his lawyer was not prepared and defense witnesses were not present; petitioner failed to set forth the substance of the absent witnesses's testimony). See also Johnson v. Wyrick, 653 F.2d 1234, 1240 (8th Cir. 1981) (no due process violation shown where trial judge refused to grant a continuance where the trial had been postponed three times).

Petitioner has not come close to demonstrating that he was treated in a fundamentally unfair manner. By the time his case finally got to trial, several years had passed thus giving Petitioner and his many lawyers ample opportunity to prepare. Furthermore, given that numerous eye witnesses (including both private citizens and law enforcement officers) placed the drunken petitioner at the parking lot where he was arrested and given that Petitioner confessed to driving his pickup on I-80, petitioner's desire to continue the trial to pursue an alibi defense was ridiculous. Finally, given that Petitioner has presented no evidence that his seventh lawyer, who had over 40 days to prepare, was in fact unprepared at trial and given that trial counsel did not dispute that he had been provided with the police reports of any new witnesses, the due process claim has no substance whatever.

### *Actual Innocence*

In order to prevail on his actual innocence claim, Petitioner is required to show "new reliable evidence ... not presented at trial establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."

*See, e.g., Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001) (citation omitted). Petitioner did not present such evidence, and consequently cannot utilize the actual innocence gateway. On the contrary, the sworn testimony of various credible law enforcement personnel and private citizens, coupled with Petitioner's confession, conclusively establishes that Petitioner was guilty. Thus, the merits of his procedurally barred claims cannot be considered.

IT IS ORDERED that the Petition for Writ of Habeas Corpus (filing no. 1) is denied. A separate judgment will be issued.

June 18, 2008.  BY THE COURT:

*s/Richard G. Kopf*
United States District Judge